IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**JAMES M. MOORE,**

    **Plaintiff,**

vs.                                                CASE NO. 4:04CV01-MMP/AK

**MELLOW CURRY, et al,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this cause of action pursuant to 42 U.S.C. §1983 alleging that the defendants were deliberately indifferent to his medical needs. (Doc. 11). Defendants have filed a special report (doc. 23), supported by additional affidavits (doc. 24), which has been construed as a motion for summary judgment (doc. 26), and to which Plaintiff has responded. (Docs. 25, 30 and 31).

**I.**    **Allegations of the Amended Complaint (doc. 11)**

Plaintiff claims that on June 5, 2003, he was transferred to Lake Butler Medical Center for treatment for disc deterioration in his lower back. (Doc. 11, p.7). He claims he was given steroid shots, which did not provide him relief, and he was returned on

September 11, 2003, per Dr. Michael Lord's orders, to River Junction Work Camp. Plaintiff claims that he went on sick call on September 22, 2003, to get his prescriptions filled when Defendant Glenda Edwards informed him that because he refused treatment at Lake Butler for his back his prescriptions were canceled, as were his medical passes. Plaintiff asked Defendant Edwards to show him his refusal in the medical records, and she allegedly told him he would need to return on a call out to see the doctor.

Plaintiff then claims that he saw Defendant Mary Curry,[1] a Registered Nurse Practitioner, on October 10, 2003, and she told him that because of his refusal to be treated his pain medication had not been refilled, but she authorized a pain prescription to be administered once a day Monday through Friday, with no pain medication over the weekends.  Plaintiff claims that he never signed a refusal slip, that the one pill a day was ineffective to control his pain leaving him in constant pain, especially the 48 hours over the weekend.  Plaintiff claims that he has been unable to sit, bend, lift or lay down, and has had difficulty sleeping.  He argues that some treatment for the deteriorating discs in his back is needed before permanent irreparable damage results.

Plaintiff seeks removal of all medical and legal liens upon his inmate account; payment of all past, present and future medical bills; attorneys fees; $750,000.00 in compensatory damages; and an order directing an investigation into the medical department.

Attached to the complaint are the following exhibits:

---

[1] According to her affidavit, this defendant's first name is actually Mellow.

**No. 4:04cv01-mmp/ak**

a) Exhibit 1- Informal grievance dated September 26, 2003- Plaintiff complains that he had a pain pill prescription when he left Lake Butler, and he wants it filled.  The response was that his last prescription was filled on September 11, 2003, for thirty days, and there were no refills on the prescription.  Plaintiff was told that if he was out of pain medication he could complete a sick call request.

b) Exhibit 2-Formal grievance- Plaintiff's portion is illegible, but the response states: "You saw the Practitioner on 10/10/03 and received a prescription for pain medication.  Grievance denied."  Attached to the grievance are copies of two prescriptions for Phenylgesic TYA, Quantity 60, dated 9/15/2003 and 9/26/03.

c) Exhibit 3-Appeal to the Secretary dated October 21, 2003.  Plaintiff complained that Defendant Curry stated he had no refill, but he did, and she falsified his record.  In an attachment to the grievance, Plaintiff complains that no one could produce a written refusal by him for back treatment and that the prescription for Phenylgesic was for four tablets a day, and the Defendants Curry and Edwards gave him one tablet a day, and none on the weekends, so he was in pain most of the time. Plaintiff also complains that Dr. Lord at Lake Butler told him that he would need to return for surgery, but this never happened.

The response was, in part, that the "physician order sheet indicates that on 9/11/03 you were prescribed medication for 30 days.  On 10/10/03 your prescription was re-ordered.  You are receiving your medications as ordered by the physician."

**No. 4:04cv01-mmp/ak**

**II.     Standard of Review**

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial. Celotex, 477 U.S. at 322-23. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). "For factual issues to be considered genuine, they must have a real basis in the record." Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v.

**No. 4:04cv01-mmp/ak**

Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, Celotex, supra at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment. Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

### III. Defendants' Rule 56(e) evidence

    a) Medical Records

Dr. Michael Lord ordered x-rays and a MRI, which were taken in February and March 2003, respectively, and showed that Plaintiff had degenerative disc disease with left side disc protrusion. (Doc. 27, Exhibit A). His impression was low back pain, and he prescribed three epidural steroid injections and physical therapy. The injections did not provide sufficient relief, but Dr. Lord stated that he would not perform surgery unless Plaintiff quit smoking. Plaintiff underwent two of the three injections, apparently refusing the last one. He was received at River Junction and it was noted that he was on Percogesic medication. Physician's Order Sheets show that he received a two months supply of Percogesic Tabs on October 10, 2003.

**No. 4:04cv01-mmp/ak**

b) Affidavit of Glynda Edwards

Defendant Edwards attests that she is a SRN with the Florida Department of Corrections and participated in the dispensing of medication to Plaintiff. She says the procedure for prescriptions written at other institutions is that they may not be honored at River Junction, and a review by the Chief Health Officer is necessary prior to dispensing medications. She stated that Plaintiff received a prescription for sixty tablets at the Lake Butler facility, Rx # 3340664 to be refilled September 26, 2003. Plaintiff had another prescription for the same medication, Rx #3321511, to be refilled September 15, 2003. River Junction reissued a prescription for the same drug on September 11, 2003, and refilled it on October 10, 2003. Plaintiff attempted to refill the prescriptions from Lake Butler, but this request was refused because he was already receiving the medication on another prescription.

It was decided to reduce his medication after October 10, 2003, because he had been seen by medical staff for injuries resulting from "horseplay," indicating that he was not in severe pain. It was also decided to administer the medication once a day, rather than give him several pills at one time, because several "pill counts" had revealed that Plaintiff did not have the number of pills he was supposed to have. It was suspected that he was trading some of his pain medication for cigarettes since it was known that he had no money, but he was seen with cigarettes, and even told Defendant Edwards that he had nothing to trade for cigarettes after he began receiving his medication one pill at a time.

**No. 4:04cv01-mmp/ak**

Defendant Edwards stated that Plaintiff received several epidural injections while being treated by Dr. Lord at Lake Butler, but because of his smoking surgery was not planned.

      c)       Affidavit of Mellow Curry (doc. 24)

Defendant Curry attests that she is an Advanced Registered Nurse Practitioner and a designee for the Regional Executive Medical Director. There is no Chief Health Officer at River Junction. Defendant Curry is responsible for prescribing medication to inmates, including Plaintiff. She refilled one prescription for Plaintiff that required it to be administered twice a day, but reduced this to once a day when he was observed in certain activities and suspected of trading medication for cigarettes. His medication was further reduced to one tablet five days a week, with no medication on weekends, and he tolerated this well.

      d)       Affidavit of John Burke

John Burke is Director of Health Services Administration and he attests that all decisions regarding medication is left to the Chief Health Officer or the Advanced Registered Nurse Practitioner.

**IV.**    **Plaintiff's Evidence (doc. 25)**

      a) Exhibit A-Health Information Arrival Summary dated September 18, 2003, showing that Plaintiff was received at RJWC (River Junction Work Camp) on this date and was currently receiving Percogesic. The arrival summary also shows it was signed by both Defendants and that he had no relief with the epidural injection of which he received two and refused the last injection. Physical therapy was ordered.

**No. 4:04cv01-mmp/ak**

Also included in this exhibit is a Transfer Summary from RJWC to RMC (Regional Medical Center) on November 19, 2003, for an "ortho" appointment on November 24, 2003.  The summary indicates that he was on Percogesic tabs daily and had a low bunk pass, no sports, and no repetitive bending or squatting passes.

A Physician's Order Sheet dated October 10, 2003, shows that a two months prescription for Percogesic tablets was ordered by Defendant Curry.

An entry dated October 8, 2003, shows that Plaintiff was treated for a laceration resulting from a slip in the bathroom after "horseplaying" with another inmate.  This entry was signed by Defendant Curry.

b) X-ray reports show that "Facet Block" (epidural) was performed on August 11, 2003, and August 18, 2003.

c) Affidavits of Defendants Curry and Edwards.  Plaintiff takes issue with some of the statements made in the affidavits, such as Defendant Edwards referencing the wrong inmate number and her statement that he received a prescription on September 11, 2003, when he arrived at RJWC, but he did not arrive until September 18, 2003, as evidenced by the arrival summary.[2]  Plaintiff also takes issue with the date of the alleged "horseplaying" incident and when he requested a low bunk pass, but it is not clear what that issue is.  He also takes issue with the alleged pill counting incident referenced by Defendant Curry, which he says would have resulted in a disciplinary report if it had really happened.

---

[2] Plaintiff himself states in the amended complaint that he arrived at RJWC on September 11, 2003.

**No. 4:04cv01-mmp/ak**

## V. Analysis

Medical claims under the Eighth Amendment[3] have an objective and subjective component, each of which additionally is considered to encompass two subsidiary requirements. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000), cert. denied, 531 U.S. 1077, 121 S.Ct. 774, 147 L.Ed.2d 673 (2001). The "objective component" of the Eighth Amendment standard requires a determination whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. See Wilson v. Seiter, 501 U.S. 294, 303, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991). This objective component varies with the situation and the conduct in question and is responsive to "contemporary standards of decency." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); see also Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). An objectively serious deprivation requires (1) showing an objectively "serious medical need." Estelle, 429 U.S. at 104. A serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). In addition, an objectively serious deprivation requires (2) showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain" and not simply "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state law. Estelle, 429

---

[3] In his amended complaint, Plaintiff lists under the Statement of Claims section that he brings his claims under the Fourth, Fifth and Sixth Amendments, as well, but medical claims by prisoners, such as those asserted here, are governed by the Eighth Amendment.

**No. 4:04cv01-mmp/ak**

U.S. at 105-06 (internal quotation marks omitted). See Taylor, 221 F.3d at 1257; see also Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow, at 1243, quoting Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994).

To show the required subjective intent to punish the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. This is defined as requiring (1) an "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists" and (2) the actual "draw[ing of] the inference." Farmer, 511 U.S. at 837. In sum, in a claim of denial of medical attention under the Eighth Amendment "[u]ltimately, there are [] four requirements: an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor, 221 F.3d at 1258.

The evidence before the Court is that Plaintiff had a serious medical need, degenerative discs in his lower back, which caused pain unrelieved by epidural injections. He had two injections, but did not take the last one.[4] When he arrived at River Junction he had two overlapping prescriptions for Phenylgesic with refills on September 15, 2003, and September 26, 2003, for sixty tablets each. (Doc. 11, Exhibit

---

[4] There is a dispute about whether he refused the last one or not, but regardless he and Dr. Lord were of the opinion that the injections were not working anyway. This dispute is not material.

**No. 4:04cv01-mmp/ak**

2). A prescription for Percogesic was given to him on October 10, 2003, a few days after he was treated for lacerations resulting from what he told Defendant Curry was "horseplaying" in the bathroom with another inmate. Both he and Defendant Curry agree that the dosage was reduced after this time. Plaintiff's own evidence shows that he was given follow up treatment with an orthopedist on November 19, 2003, at which time it was noted that he was on medication and had several medical passes.

     Under the relevant case law cited above, it is clear that Plaintiff had a serious medical need documented by x-ray and MRI. The question that remains is whether the medical staff responded insufficiently or with deliberate indifference to that need. Plaintiff's own evidence refutes such a finding. Plaintiff was given at least sixty tablets of a pain killer on September 11, 2003. This medication was supposed to last 30 days. On October 11, 2003, he received another prescription for the pain killer. Plaintiff was even told in response to his informal grievance that if for some reason he did not have enough medication, he could request sick call. Although he takes issue with Defendant Curry's decision to reduce this medication, she has explained her decision based on her observations and knowledge of a potential abuse of the medication. Defendant Curry also explained that he appeared to function well despite the reduction in medication, and Plaintiff has not supplied any evidence to show otherwise. He received a follow up appointment in November where any difficulties resulting from this reduction in medication could have been documented, but was not. Plaintiff's may disagree with the medical decisions made with regard to his treatment, but such disagreement is not cognizable under 42 U.S.C. §1983. This court is concerned only with a disregard of a

**No. 4:04cv01-mmp/ak**

serious condition or a failure to treat a medical need, and Plaintiff has not made this showing.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion (doc. 27) be **GRANTED**, and Plaintiff's amended complaint (doc. 11) be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2).

**IN CHAMBERS** at Gainesville, Florida, this **30th** day of September, 2005.

s/ A. KORNBLUM
ALLAN KORNBLUM
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 4:04cv01-mmp/ak**